WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lidia Ramirez,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-22-01929-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Lidia Arnold Ramirez's Application for Disability Insurance Benefits under the Social Security Act by the Commissioner of the Social Security Administration ("Commissioner"). On November 14, 2022, Plaintiff filed a Complaint with this Court, seeking judicial review of the denial of benefits. (Doc. 1.) On March 1, 2023, Defendant Commissioner filed an Answer. (Doc. 12.) The Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl. Br."), the Commissioner's Response Brief (Doc. 23, "Def. Br."), and Plaintiff's Reply Brief (Doc. 24, "Pl. Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.   BACKGROUND**

    **A.   Procedural History**

On February 8, 2019, Plaintiff filed an application for Social Security Disability Insurance Benefits, alleging a period of disability beginning on December 23, 2017. (Pl. Br. at 2.) Plaintiff's claim was initially denied on April 5, 2019, and upon reconsideration

on August 30, 2019. (R. at 289–92, 297–302.) Subsequently, Plaintiff filed a written request for a hearing which was received on September 26, 2019. (R. at 14.) A telephonic hearing was held on January 22, 2021, and the ALJ held a supplemental telephonic hearing on July 16, 2021. (*Id.*) The ALJ denied Plaintiff's application on August 23, 2021. (R. at 15–25.) Thereafter, the Appeals Council denied Plaintiff's request for review on September 23, 2022, and the ALJ's decision became final. (R. at 1–4.) On November 14, 2022, Plaintiff filed an appeal in this Court, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Doc. 1 at 1.)

### B.     ALJ Determination

The Court has reviewed the medical evidence and the administrative record and will discuss pertinent evidence in addressing the issues raised by the parties. At step one of the five-step sequential analysis, the ALJ determined that Plaintiff has not engaged in substantial gainful activity during the period from Plaintiff's alleged onset date of December 23, 2017, through August 23, 2021. (R. at 16.) The ALJ evaluated Plaintiff's disability based on the following severe impairments: venous insufficiency/venous stasis, edema of the bilateral lower limbs/lymphedema, peripheral neuropathy, early medial compartment degenerative joint disease of the bilateral knees, fibromyalgia, and obesity. (*Id.*) The ALJ further determined that Plaintiff did not have an impairment that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 17.)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff's symptom testimony was not entirely consistent with the objective medical evidence and other evidence in the record. (R. at 19.) The ALJ also considered the medical opinions of two state agency medical consultants, Christine Sabeh, MD, Plaintiff's physical therapist Natalie Fogelson PT, as well as a narrative from Plaintiff's primary care physician. (R. at 22–23.) Ultimately, the ALJ found that Plaintiff had the RFC to perform sedentary work with exceptions and additional limitations. (R. at 18.)

At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" based on her age,

education, work experience, and RFC. (R. at 24.) Therefore, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from the alleged disability onset date through the date of the ALJ's most recent decision. (R. at 25.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, courts are to review only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; indeed, it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ follows a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof as to the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, then at step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. DISCUSSION

Plaintiff raises two arguments for the Court's consideration. (Pl. Br. at 1.) First, Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. (*Id.* at 13.) Second, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence and the ALJ erroneously evaluated the medical opinions of Dr. Sabeh and state agency consultant A. Wong, MD. (*Id.* at 20.)

#### A. Plaintiff's Symptom Testimony

Plaintiff first contends that the ALJ erred in rejecting her symptom testimony without providing clear and convincing evidence. (*Id.* at 13.) In opposition, the Commissioner argues that the ALJ did not err because the ALJ explained that Plaintiff's testimony was inconsistent with the objective medical record and Plaintiff's treatment. (Def. Br. at 6–8.)

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, the ALJ must evaluate the claimant's testimony in light of the objective medical evidence and other evidence in the record. *See* 20 C.F.R.

§§ 404.1529(c)(2)–(3). "[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Under the clear and convincing standard, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (noting that the clear and convincing "standard requires an ALJ to show his work"). An ALJ may consider several factors, including: (1) the testimony's consistency with the objective medical record; (2) the claimant's daily activities; and (3) whether the claimant's treatment is conservative. *See id.* at 497.

In this case, Plaintiff testified that her impairments cause severe limitations. (R. at 971.) Specifically, Plaintiff claimed that she experiences chronic severe leg pain, swelling, inflammation, and nerve damage at a pain level of nine to ten out of ten. (R. at 256.) Plaintiff also explained that she has lymphedema in her legs, and it "interferes with [her] daily tasks at home." (*Id.*) Plaintiff testified that she maintains a lymphatic therapy that takes two hours and forty minutes each day and is required to elevate her legs "at least five to six hours a day." (*Id.* at 257–59.) Additionally, Plaintiff stated that she has arthritis in her fingers, hands, wrists, and elbows, and she has vertigo, which makes it difficult to walk or drive. (*Id.* at 259–60.) Lastly, Plaintiff testified that she cannot sit for longer than ten minutes, can only stand for five minutes at a time, and can only walk long distances with wheelchair assistance. (*Id.* at 260–61.)

The ALJ considered Plaintiff's testimony and determined at step one that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 19.) At step two, however, the ALJ found that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ rejected Plaintiff's symptom testimony, offering two reasons. (R.

at 19–21.)

      **i.**      **Inconsistency with Objective Medical Record.**

The ALJ first compared Plaintiff's allegations to the objective medical evidence and determined that Plaintiff's testimony was "inconsistent because the record does not establish findings preclusive of fulltime sedentary exertion work." (*Id.*) The ALJ noted several inconsistencies between Plaintiff's testimony and the objective medical findings. (*Id.*) For instance, while Plaintiff complained of "severe" swelling in her legs (R. at 256), the ALJ explained that medical records from 2017, 2019, and 2020 revealed only "mild" or "some swelling." (R. at 19–21.) In fact, in August 2020, an examination by Plaintiff's primary care provider revealed "normal gait and stance," "ambulation did not require walker," "no knee joint swelling" and "normal lumbar spine, knees, ankles, and shoulders." (R. at 20, 884.)

Plaintiff argues the ALJ erred by "fail[ing] to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] symptom testimony." (Pl. Br. at 14.) The record does not support this contention. As emphasized above, the ALJ pointed to several inconsistencies between the objective medical record and Plaintiff's subjective complaints that undermine the severity of her expressed limitations. (*See* R. at 19–20.) Moreover, "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

By pointing to substantial evidence in the objective medical record that is inconsistent with Plaintiff's symptom testimony, the ALJ articulated a clear and convincing reason to reject Plaintiff's testimony. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record," courts "may not engage in second-guessing"). Ordinarily, a "lack of [corroborating] medical evidence cannot form the sole basis for discounting pain testimony," but that is not the case here. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). The ALJ also determined that

1 Plaintiff's symptom testimony is not only unsupported by the medical record but is also
2 inconsistent with Plaintiff's treatment history. *See id.* at 680; 20 C.F.R. § 404.1529(c)(3)
3 (explaining that an ALJ may consider treatment as a relevant factor in assessing a
4 claimant's symptom testimony). For these reasons, the ALJ properly relied on the
5 objective medical record in rejecting Plaintiff's symptom testimony.

### ii. Plaintiff's Treatment

The ALJ also relied on Plaintiff's effective treatment records. (R. at 19–22.) It is proper for an ALJ to consider whether a claimant takes medication or undergoes treatment of his or her symptoms. *Lingenfelter*, 504 F.3d at 1040. Indeed, the extent of a claimant's treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

In his decision, the ALJ cited numerous instances in the record where Plaintiff's symptoms improved with treatment. (*See* R. at 19–21.) For instance, the ALJ explained that Plaintiff's symptoms improved after she was prescribed and treated with Gabapentin and Cymbalta. (R. at 19 (citing R. at 710–15).) The medical records the ALJ relied on report, "[Plaintiff] states that she is doing better on the 30mg Cymbalta plus gabapentin [and] is having less joint pains and leg pains" as well as that her "symptoms are improving." (R. at 711.) The ALJ also explained that treatments such as Plaintiff's "complete decongestive therapy," compression pump, and Orthovisc injections to the knees all proved effective means to mitigate Plaintiff's symptoms. (R. at 19–20; *see also* R. at 869 (explaining that Plaintiff "feels significantly improved" after her first set of Orthovisc injections); R. at 886 (noting that Plaintiff's "pain gets better with meloxicam" and that she "took a course of prednisone after her last visit which helped her pain").)

Plaintiff argues that the ALJ failed to look at her improvements "in the broader context of the record and impairments." (Pl. Br. at 15.) After reviewing the record, the

Court acknowledges that there is some evidence suggesting that Plaintiff continued to experience pain and other symptoms. (*See, e.g.*, R. at 940 (stating that "[o]verall, her pain has not changed").) Nonetheless, when "evidence exists to support more than one rational interpretation," as is the case here, the court "must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). As noted above, the ALJ provided several examples where Plaintiff's symptoms improved with treatment. (*See* R. at 19–21.) Accordingly, the ALJ's determination that Plaintiff's effective treatment undermined her subjective complaints is another clear and convincing reason to reject Plaintiff's symptom testimony.

      Plaintiff also contends that the ALJ improperly substituted his own medical opinion when rejecting Plaintiff's testimony. (Pl. Br. at 17.) Specifically, Plaintiff takes issue with the ALJ's finding that her lymphatic treatment program and practice of elevating her legs several hours each day did not preclude her from full-time work activity because the record did not establish when the treatment must be performed. (R. at 21.) According to Plaintiff, the ALJ's finding is based on "the ALJ's own opinion, and did not support a wholesale rejection of [Plaintiff's] symptom testimony." (Pl. Br. at 17.) The Court has already determined that the ALJ provided two clear and convincing reasons to reject Plaintiff's symptom testimony. Those reasons are sufficient to uphold the ALJ's decision; nonetheless, the Court is not persuaded that the ALJ impermissibly relied on his own opinion in making this finding. Both parties agree that "a treating provider did not specifically state *when* [the treatment] had to be completed." (Pl. Br. at 17; Def. Br. at 9.) As such, the ALJ was not impermissibly substituting his own opinion when he stated that the therapy could be performed outside work hours. Rather, the ALJ was carrying out his charged duties to rationally interpret the record and draw conclusions supported by substantial evidence in the record. As a rational interpretation of the record, the ALJ did not err in making this finding. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (explaining that a district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

Plaintiff also argues that the ALJ erred when he "failed to note any specific activities that [Plaintiff] could perform that were inconsistent with any particular portion of her testimony." (Pl. Br. at 18–19.) Contrary to Plaintiff's argument, the ALJ is not required to make this finding. *See* 20 C.F.R. § 404.1529(c)(3) (listing a claimant's daily activities as one of many factors an ALJ might consider). The ALJ properly rejected Plaintiff's symptom testimony, as substantial evidence supports the ALJ's finding that her testimony was inconsistent with the objective medical record and her treatment history.

### B.     Medical Opinions

Next, Plaintiff contends that the ALJ did not adequately consider the medical opinions of Dr. Sabeh and Dr. Wong. (Pl. Br. at 20.) Conversely, the Commissioner contends that the ALJ sufficiently articulated the supportability and consistency factors, as well as the persuasiveness of each opinion. (Def. Br. at 13–14.)

In January 2017, the Social Security Administration ("SSA") amended its regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on February 8, 2019, the revised rules apply. (R. at 445–49.) Unlike the prior regulations, the SSA's revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830–31 (9th Cir. 1995) (requiring an ALJ provide "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting a treating physician's opinion). Rather, the revised rules require the ALJ to assess how persuasive each medical opinion is based on several enumerated factors. 20 C.F.R. §§ 404.1520c(a)–(b); 416.920c(a). The most important factors in assessing a medical opinion's persuasiveness are its supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)).

### i. Dr. Sabeh's Opinion

Plaintiff contends that the ALJ's failure to rate the persuasiveness of Dr. Sabeh's opinion constitutes reversible error. (Pl. Br. at 20.) After reviewing Plaintiff's medical records, Dr. Sabeh determined that Plaintiff can continuously lift up to 100 pounds, frequently carry up to 20 pounds, and occasionally carry up to 100 pounds. (R. at 915.) Dr. Sabeh found that Plaintiff can sit up to eight hours, stand for two hours, and walk for two hours at any one time. (*Id.* at 916.) Dr. Sabeh noted that Plaintiff experiences chronic bilateral lower extremity pain and is sensitive to touch, but also found that she exhibits normal gait and station and has no limitations with ambulation. (*Id.* at 915–20.) Lastly, Dr. Sabeh determined that Plaintiff can perform tasks such as shopping, traveling without assistance, maintaining personal hygiene, and climbing a few steps with use of a handrail. (*Id.* at 920.)

In considering Dr. Sabeh's opinion, the ALJ explained:

> In support of her conclusions, [Dr. Sabeh] indicated the claimant is noted to have sensitivity to touch in the lower extremities with pain, but she demonstrated normal gait and station with no limits in ambulation. [Dr. Sabeh] cited to specific references in determining the claimant's impairments did not meet a listing. . . . In support, [Dr. Sabeh] noted that the claimant's documented physical findings did not establish further limitation, as the degree of edema was not documented. However, the medical expert's opinion and testimony were based solely on objective findings and did not consider the claimant's subjective complaints, elicited via testimony at the first hearing. Her conclusions are inconsistent with that of the reconsideration state agency consultant.

(R. at 22.) The SSA's amended regulations make clear that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or

other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citations omitted). The ALJ here failed to articulate the persuasiveness of Dr. Sabeh's opinion. This constitutes legal error.

The Court must now address the effect of this legal error. "A decision of the ALJ will not be reversed for errors that are harmless." *Burch*, 400 F.3d at 679. An error is harmless if it is not prejudicial to the claimant or would not change the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). A court may also uphold the ALJ's decision if "despite the legal error, the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Andrews*, 53 F.3d at 1099)).

In this case, the ALJ evaluated Dr. Sabeh's opinion against the medical record and Plaintiff's symptom testimony, and explained that portions of Dr. Sabeh's testimony were inconsistent with Dr. Wong's opinion. (R. at 22.) Moreover, while Dr. Sabeh found that Plaintiff could occasionally lift up to 100 pounds and sit up to eight hours (R. at 915), the ALJ ultimately determined that Plaintiff could occasionally lift and carry up to ten pounds and sit up to six hours. (R. at 18.) By comparison, the ALJ's assessment was more limiting than Dr. Sabeh's opinion, suggesting the ALJ found Dr. Sabeh's opinion less persuasive. Although the agency "explain[ed] its decision with less than ideal clarity," the Court determines that "the agency's path may be reasonably discerned." *Brown-Hunter*, 806 F.3d at 492. Accordingly, the ALJ's failure to rate the persuasiveness of Dr. Sabeh's opinion constitutes harmless error.

### ii. Dr. Wong's Opinion

Plaintiff also argues the ALJ failed to adequately address the supportability and consistency factors in assessing Dr. Wong's medical opinion. (Pl. Br. at 20.) On August 30, 2019, Dr. Wong evaluated Plaintiff's medical records upon reconsideration of her application for disability benefits. (R. at 276–87.) Dr. Wong found that Plaintiff can stand

or walk for a total of two hours, can sit for six hours in an eight-hour workday, can occasionally and frequently lift or carry up to ten pounds, can occasionally perform postural activities, and is limited in both her lower extremities. (R. at 283–85.) Ultimately, Dr. Wong concluded that Plaintiff is not disabled and limited to sedentary exertion work. (*Id.*)

The ALJ found Dr. Wong's opinion "more persuasive" than the state agency medical consultant at the initial level who determined that Plaintiff could perform light exertion work. (R. at 22.) The ALJ explained that Dr. Wong's opinion was supported by Plaintiff's treatment history and the fact that Plaintiff had edema but no ulcerations. (*Id.*) As to consistency, the ALJ explained that Dr. Wong's findings were consistent with other objective medical evidence in the record showing edema, tenderness to the lower extremities, and fibromyalgia. (*Id.*) The Court finds that the ALJ adequately addressed the supportability and consistency factors in rating Dr. Wong's opinion "more persuasive." The ALJ's decision is also supported by substantial evidence. *Randall v. Saul*, 845 F. App'x 521, 523 (9th Cir. 2021) ("[W]here the opinions of the state agency medical consultants were consistent with the objective medical findings of record, the ALJ's decision to give 'great weight' to their opinions was supported by substantial evidence.") Plaintiff may disagree with the ALJ's interpretation of the record, but the Court will not second-guess the ALJ's reasonable interpretation of the evidence, even if such interpretation could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

Lastly, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because "the ALJ articulated *no* basis for finding that Ramirez was capable of *sustaining* sedentary work other than the ALJ's own opinion that Ramirez's leg elevation could be performed while she was not at work, and her 2-hour therapy program could be performed either before or after a workday." (Pl. Br. at 21.) The Court has already dismissed Plaintiff's argument that the ALJ improperly substituted his opinion. Moreover, the Court finds that the ALJ's RFC finding is supported by

substantial evidence. As revealed by the record, the ALJ found Dr. Wong's opinion—stating that Plaintiff could perform sedentary exertion work—consistent with Plaintiff's treatment records and other objective medical evidence. (R. at 22.) The objective medical evidence, Dr. Wong's opinion, and Plaintiff's treatment records constitutes substantial evidence supporting the ALJ's RFC finding.[1]

IV.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the August 23, 2021 decision by the Administrative Law Judge. (R. at 14–25.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 19th day of September, 2023.

Michael T. Liburdi
United States District Judge

---

[1] Plaintiff also asks this Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 23.) Because the Court has affirmed the ALJ's decision, an evaluation of the parties' arguments as to remand is not necessary.